Green, J.
delivered the opinion of the court.
This bill is brought to hold the defendant’s intestate liable for a fund which was placed in his hands to pay a note on which the complainant was an accommodation endorser. The only question is, whether a trust was thereby created, for the benefit of, and to save harmless the complainant. It appears from the record, that W. Craig was the drawer of the note, payable in the Branch Bank of Tennessee, at Columbia, and Johnson Craig, the complainant and the defendant’s intestate, were accommodation endorsers.
W. Craig, the maker, had married the widow of Alexander Johnson, who had died seized and possessed of a seventy acre tract of land in Maury county, of which his widow, the present wife of Craig, was endowed one-third. To create a fund for the payment of the note aforesaid, Craig and wife, sold her dower in the land to Samuel Stockard, the defendant’s intestate, for two hundred dollars, part of which sum was to be paid in liquidation of the note aforesaid.
Subsequently, Craig became indebted to Samuel Stockard, and, in a settlement of their accounts, it was agreed that Craig should be credited on Stockard’s account, with the two hundred dollars, which was done.
The note has been protested, and John Stockard, the complainant, has been compelled to pay the amount, about $132.
The question now is, whether Samuel Stockard held this fund in trust for the security of himself and the other endorsers. And, we think he did.
Craig proves, that he sold the land for the purpose of paying the note, and releasing his father and John Stockard as his securities; that this was the sole object in selling the land, and the condition upon which the contractwas made. In this statement Craig is corroborated by his wife, who says, she released her dower on condition, that the fund should be held for the security of the endorsers on said note. Martin L. Stockard, a brother of the complainant and the defendant’s intestate, says, he heard Samuel Stockard say, the principal object he had in *307 buying the land, was to release his brother John Stockard, who was endorser for William Craig in bank.
These depositions fully prove, that this fund was placed in the hands of Samuel Stockard, in trust, for the indemnity of the endorsers on Craig’s note.
In Story’s Equity Jurisprudence, sec. 1197, it is said, “The most simple form, perhaps, in which such an implied trust can be presented, is that of money, or other property, delivered by one person to another, to be by the latter paid, or delivered over and for the benefit of a third person. In such case, the party so receiving the money, or other property, holds it upon a trust; a trust necessarily implied from the nature of the transaction, in favor of such beneficiary, although no express agreement has been entered into, to that effect.”
And in 2d Kent’s Com. 533-4, it is said, “The legal estate passes and vests in the trustees; and a court of equity will compel the execution of the trust for the benefit of the creditors, though they be not, at the time, assenting, and parties to the conveyance. The assent of absent persons to an assignment will be presumed, unless their dissent be expressed, if it be made for a valuable consideration, and be beneficial to them.”
We think, upon these facts and authorities, that when Craig placed this fund in the hands of Samuel Stockard to indemnify the complainant as his endorser, the law implied a trust for the benefit of the complainant, which equity will enforce. 2 Story’s Eq. Juris, p. 1196; 2 Kent’s Com. 532. And that the assent of the complainant must be presumed, it being for his benefit, and for a valuable consideration. 3 Yerg. R. 262; Angel on Assig. 17, 35, 168, 173. 2 Story’s Eq. sec. 1045, 1047.
Nor can it be revoked after the trustee has taken upon himself the trust, unless the beneficiary dissents therefrom.
The decree must be reversed, and the estate of Sam. Stock-ard will be charged with the sum paid by the complainant on this note, and interest thereon.